# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RAFAEL ESTRADA,

    Plaintiff,

v.

JOSEPH J. WASS, et al,

    Defendants.

CIVIL ACTION NO. 3:10-CV-1560

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Plaintiff Rafael Estrada's motion to compel a sufficient corporate designee to testify on behalf of the Flying J Defendants pursuant to Federal Rule of Civil Procedure Rule 30(b)(6). (Doc. 36.) Since the prior deposition reflects insufficient knowledge on the part of the corporate deponent, the Flying J Defendants will be ordered to reproduce a better-prepared party to make their Rule 30(b)(6) deposition.

## BACKGROUND

On October 29, 2008, Estrada was seriously injured when he was run over by Defendant Joseph J. Wass's tractor trailer in the parking lot of the Flying J Travel Plaza Truck Stop in New Milford, Pennsylvania. As a result, in his Amended Complaint, Estrada has pending negligence claims against all Defendants, including the driver of the truck (Joseph J. Wass), the driver's employer (Wass Trucking Company, Inc.) and the operators of the Flying J Travel Plaza (the "Flying J Defendants").[1] The Wass Defendants and the

---

[1] Specifically, Estrada alleges that "[a]t all times pertinent hereto, Defendants Flying J Inc., Flying J Inc. t/a and d/b/a Flying J Travel Plaza, Flying J PDG, Inc., PDG, Inc., FJI Management, Inc., FJI II Management, Inc., CFJ Properties, Individually and/or t/a and d/b/a Flying J Travel Plaza, Travel Plaza LLC t/a and d/b/a Flying J Travel Plaza, Free VI LLC, and/or AFJ, LLC, a Subsidiary of Flying J, Inc. were the owners, leasors and/or operators, and were in exclusive possession and control of a travel plaza known

Flying J Defendants have disclaimed liability and have asserted crossclams against each other.

Following a January 18, 2012 conference call on discovery issues, the Court issued an oral order directing Estrada to submit a transcript with contentions as to deficient answers within the Flying J Defendants' Rule 30(b)(6) deposition. Plaintiff did so on January 24, 2012, and the Flying J Defendants responded on February 3, 2012. This issue is now ripe for the Court's review.

## DISCUSSION

Federal Rule of Civil Procedure Rule 30(b)(6) requires a corporation or other such entity to "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf" where a party has named the entity in a subpoena and has set out "with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In particular, "[t]he persons designated must testify about information known or reasonably available to the organization." *Id.* Although a Rule 30(b)(6) deponent is not required to have personal knowledge of the noticed topics, they are obligated to prepare to speak on these topics. *In re Neurontin Antitrust Litigation*, MDL No. 1479, 2011 WL 2357793 at *5 (D.N.J. June 09, 2011). "Even if the documents are voluminous and the review of the documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed." *Id.* (quoting *Concerned Citizens v. Belle Haven Club*, 223 F.R.D. 39, 43 (D.Conn.2004)); *Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007) ("The duty of preparation goes beyond matters personally known to the

---

as The Flying J Travel Stop located at 1623 Oliver Road, New Milford, Pennsylvania which was opened to the public for business purposes." (Am. Compl. at ¶ 18, Doc. 13.)

designee or to matters in which the designee was personally involved, and if necessary the deponent must use documents, past employees or other resources to obtain responsive information.").

Pursuant to this Rule, Estrada noticed the Flying J Defendants that he would be seeking, among many other topics, testimony as to: "[t]he organizational structure operations and corporate management of the Flying J Defendants"; "[t]he relationship, if any, between and among the Flying J Defendants"; "[d]esign standards and procedures used for the creation, upkeep and maintenance of the Flying J parking lot"; "[t]he operation and management of the Flying J parking lot"; "[a]ll policies and procedures for reporting injury incidents such as that in issue in this action"; "[i]nvestigation into the incident described in Plaintiff's Complaint"; and "[t]he results of any investigation that was done at the time of the accident." (Pl.'s Notice 30(b)(6) Dep.; Defs.' Ex. A.) For this, the Flying J Defendants nominated Bill Mulligan, the Vice President of Development, Facilities and Environmental of Pilot Travel Centers, LLC.[2] (Mulligan Dep. 5:4-5, 10:15-19, Jan. 12, 2012, Defs.' Ex. B.)

Mulligan's deposition, however, was substantially limited in respect to many of these noticed areas. While he did have many adequate answers throughout his seventy-three (73) page deposition, the transcript in its entirety reflects an overall lack of knowledge as to the core areas of inquiry Estrada warned he would be seeking. In particular, as to the Flying J's corporate structure, Mulligan represented that he did not know anything about this

---

[2]The Court notes that Pilot Travel Centers, LLC is not a named party to this dispute, but is a "wholly owned subsidiary of Pilot Corporation." (Mulligan Dep. 22:7-10, Jan. 12, 2012, Defs.' Ex. B.)

3

structure or the relationship between the Flying J corporate entities, that he did not know which Flying J entity actually owned the New Milford/Gibson Travel Plaza at the relevant times, and that he had no sense as to whether there were individual owners for each Flying J travel plazas or how that worked at all.  (Mulligan Dep. at 13:4-15, 14:9-15:6, 18:14-17, 19:7-11.)  He also did not know who the manager was for the New Milford Plaza at the time of the accident and had no knowledge about any potential lease agreements between the Flying J entities concerning the various pieces of the New Milford Plaza.  (*Id.* at 68:17-19, 69:13-18.)  As for the operations of the New Milford Plaza, Mulligan could not say whether there were any standards, policies, or procedures as to the upkeep, maintenance, or safety of the Plaza, and was uncertain if there were regular parking lot inspections back in 2008.  (*Id.* at 31:1-16, 68:5-8.)  He was further unsure about the Plaza's speed limits, parking configurations, speed bumps, approximate daily traffic, or if there were any personnel at the Plaza available to provide directional help to a truck coming in at the relevant times.  (*Id.* at 33:18-21, 63:22-25, 68:12-14, 39:8-11, 52:19-24).  In regard to previous accidents, Mulligan did not know what the policies and procedures were for incident reports in 2008, or if there were any pedestrian accidents preceding October 29, 2008.  (*Id.* at 32:10-14, 61:5-8.)  And, as to Estrada's specific accident, Mulligan did not know if anyone from the Flying J even spoke to Mr. Estrada, whether there existed an incident report on Estrada's accident, or even if Pilot or Flying J ever investigated the accident.  (*Id.* at 68:9-11, 32:6-9, 68:25-69:5.)  Finally, Mulligan testified that he had not reviewed a police report of the accident and that he had not seen any incident reports as to the matter.  (*Id.* at 69:13-21, 32:6-21.)

  While a Rule 30(b)(6) deponent need not have perfect responses to each question,

nor a clairvoyant ability to predict every single question that may be posed, the above shortcomings in Mulligan's testimony reflect a lack of preparation as to the relevant topics Estrada requested. Moreover, when a designee is unable to respond with information, the designee should at least disclose what was done to secure that particular information. The Flying J Defendants argue that previous Flying J managers are no longer employed with Pilot,[3] and that Mulligan adequately testified "about information known or reasonably available to Pilot." (Defs.' Br. at 3, Doc. 37.) The Court does not find this to be the case as Mulligan's statements reflect that Pilot has access to a wide range of Flying J's documents. Specifically, Mulligan represented that Flying J had provided Pilot with "every document that they had available." (Mulligan Dep. at 26:3-11.) As a corporate party has a duty to prepare its designee to "the extent matters are reasonably available, whether from documents, past employees, or other sources," *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, Civ. Act. No. 09-290, 2010 WL 4922701 at *3 (W.D. Pa. Nov. 29, 2010) (citation omitted), the Court finds that Mulligan's testimony was not sufficiently informed or prepared on the noticed topics. Therefore, the Flying J Defendants will be ordered to reproduce an appropriate Rule 30(b)(6) corporate deponent.

---

[3] The Defendants represent that, following Flying J's bankruptcy, "[o]n or about July 1, 2010, Pilot Travel Centers, LLC, purchased a hundred percent (100%) of the retail assets of Flying J. Presently, the travel center in question is owned by Pilot Travel Centers, LLC." (Defs.' Br. at 2, Doc. 37.) In his deposition, Mulligan stated that while "Pilot bought Flying J's assets . . . Flying J Management came out of what was left." (Mulligan Dep. 8:10-20, Jan. 12, 2012, Defs.' Ex. B.) Mulligan also added that Flying J Management owns approximately 18% of Flying J. (*Id.* at 9:20-10:1.) Flying J Management does not appear to be a party to this case.

**CONCLUSION**

The Court finds the Flying J Defendants' Rule 30(b)(6) deponent should have more adequately prepared through available sources to address the Plaintiff's noticed deposition topics. Therefore, the Flying J Defendants will be ordered to reproduce a corporate representative for deposition. Trial will be continued pending this additional deposition and the Court will await the results before proceeding on the Flying J Defendants' Motion for Summary Judgment (Doc. 40). An appropriate order follows.

April 16, 2012  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge